Maurice L. BIANCHI, f/d/b/a
M. Bianchi of California,
Plaintiff–Appellant,

v.

William F. RYLAARSDAM; David
G. Sills; Edward J. Wallin,
Defendants–Appellee.

Bank of America National Trust
& Savings Association, Real–
party–in–interest–Appellee.

No. 00–55585.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 17, 2001.

Filed June 27, 2003.

Scott Michael Cantor, Graziadei & Cantor, LTD., Las Vegas, Nevada, for the appellant.

Bill Lockyer, Attorney General, Manuel Mendeiros, Senior Assistant Attorney General, Andrea L. Hock, Supervising Attorney General, Thomas F. Gede, Deputy Attorney General, Jennifer K. Rockwell, Deputy Attorney General, Sacramento, CA, for the appellees.

Before B. FLETCHER, D.W. NELSON, and McKEOWN, Circuit Judges.

Opinion by Judge McKEOWN; Concurrence by Judge BETTY B. FLETCHER.

## OPINION

McKEOWN, Circuit Judge.

At the heart of this case is a disappointed litigant's attempt to obtain in federal court the very relief denied to him in state court, namely an injunction vacating a decision by the California Court of Appeal and reassigning his case to a different division or district because of the alleged bias of one of the justices. Maurice L. Bianchi unsuccessfully presented his bias claim to the California state courts, citing both a California procedural statute and the state and federal constitutions. After losing on two separate occasions, he filed a federal civil rights suit, which, in this case, is the functional equivalent of an appeal of the state court decision. For us to entertain his challenge and grant relief would necessarily require us to review and invalidate the state court decision, a result that is inconsistent with the *Rooker–Feldman* doctrine. Under *Rooker–Feldman*, a federal district court is without subject matter jurisdiction to hear an appeal from the judgment of a state court. Thus, we affirm the district court's order dismissing Bianchi's complaint against the California Court of Appeal justices who adjudicated his appeal.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the early 1990s, Bianchi commenced an action against Bank of America in the Superior Court of California (Orange County). Following a protracted trial, in which Judge Mason L. Fenton presided, the jury returned a verdict in favor of Bank of America on all of the claims asserted by Bianchi and on Bank of America's counterclaim. Bianchi then filed a series of post-trial motions. During the post trial proceedings, Bank of America moved to disqualify Judge Fenton. Although he denied Bank of America's mo-

tion, Judge Fenton later recused himself voluntarily.

After the recusal, the case was transferred to then-Superior Court Judge William Rylaarsdam. Immediately upon reassignment and before any substantive proceedings took place, Bianchi's trial counsel took advantage of a statutory disqualification available under California Code of Civil Procedure § 170.6(2), resulting in the automatic disqualification of Judge Rylaarsdam.[1] A third judge subsequently denied Bianchi's post-trial motions. Bianchi then appealed to the Court of Appeal for the State of California, Fourth Appellate Division. Bianchi's appeal was assigned to a panel that included now Justice Rylaarsdam, who had been elevated to the California Court of Appeal during the intervening years. The three-judge panel also included Justices David G. Sills and Edward J. Wallin.

For his appeal, Bianchi's appellate counsel compiled an excerpt of record that included documents reflecting Judge Rylaarsdam's disqualification in the trial court. Thus, at the time Bianchi's case was assigned to be heard before the appellate panel, Bianchi's counsel knew that Bianchi had previously used a "peremptory" challenge under § 170.6(2) to remove then-Judge Rylaarsdam from his case. Bianchi did not, however, bring this information to the court's attention or file a motion to disqualify Justice Rylaarsdam at that time. Only after he lost his appeal did Bianchi object, via a Petition for Review to the California Supreme Court, to Justice Rylaarsdam's presence on the panel that decided his appeal. Without reaching the merits of Bianchi's argument, the California Supreme Court rejected Bianchi's Petition for Review as untimely.

With the direct review of his case apparently concluded, Bianchi then tried another tactic; he filed a motion before the California Court of Appeal to recall the remittitur, claiming that Justice Rylaarsdam's presence on the panel violated his federal and state constitutional right to due process and was contrary to California procedural rules. Through this motion, Bianchi sought to have the Court of Appeal vacate its opinion and reassign his appeal to a different panel. Justice Sills entered a summary order denying Bianchi's motion. Although Justice Sills did not reference the state or federal constitutional argument in his decision, nothing in the record suggests that the court neglected its responsibility to consider Bianchi's claims, including his constitutional challenge.

Not satisfied, Bianchi sought a Writ of Mandate from the California Supreme Court, again asserting that his due process rights were violated and again seeking to have the appellate court's opinion vacated and his appeal reassigned to a different panel. The California Supreme Court denied his petition.

Having lost before the state courts, Bianchi filed suit in federal court against the three appellate justices, once again claiming that his due process rights were violated and once again seeking to have the appellate court's opinion vacated and his appeal reassigned to a different panel. In his federal suit, filed pursuant to 42 U.S.C. §§ 1982 and 1988, Bianchi sought a declaratory judgment that would "declar[e] repugnant to the Constitution of the United States, the practice of a Judge previously disqualified from hearing a matter as a Trial Court Judge from sitting in judgment of the same matter as an Appellate

1. Under that provision, the movant must state generally that the judge should be disqualified on grounds of prejudice. Once the motion is made, the judge is automatically disqualified. See Cal.Civ.Proc.Code § 170.6(3). No assessment of prejudice is undertaken.

Court judge." He also sought the issuance of a "mandatory injunction to require the Defendants to recall the Remittitur issued . . . and the resetting of that matter for argument and decision after transfer of that case to a different division or Appellate District of the Court of Appeal of the State of California."

■ Justices Sills, Wallin and Rylaarsdam moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and the *Rooker–Feldman* doctrine. They also moved to dismiss the complaint for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6). The district court granted the motion to dismiss based on *Rooker–Feldman*. We review de novo a dismissal for lack of subject matter jurisdiction. *See, e.g., La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024 (9th Cir.2001).

## Discussion

In analyzing a *Rooker–Feldman* challenge, it is instructive to consider the Supreme Court's precise language that was the genesis of this doctrine. Although the principle that federal courts lack jurisdiction to hear appeals from state court decisions was firmly established in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), it was not until sixty years later, in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), that the now-familiar test was articulated:

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application [for relief], then the District Court is in essence being called upon to review the state court decision. This the District Court may not do.

*Id.* at 483 n. 16, 103 S.Ct. 1303.

> United States District Courts . . . do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.

*Id.* at 486, 103 S.Ct. 1303.

■ *Rooker–Feldman* is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments: If claims raised in the federal court action are "inextricably intertwined" with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction. *See Feldman*, 460 U.S. at 483 n. 16 & 485, 103 S.Ct. 1303. Simply put, "the United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings." *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir.1986).

■ With these principles in mind, we conclude that the district court lacks jurisdiction to consider Bianchi's claims. Far from bringing a general constitutional challenge that is not "inextricably intertwined" with the state court decision, Bianchi essentially asked the federal court to review the "state court's denial in a judicial proceeding," *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. 1303, and to afford him the same individual remedy he was denied in state court. *See Craig v. State Bar of California*, 141 F.3d 1353, 1354–55 (9th

Cir.1998) (holding complaint did not raise a general challenge where the relief sought was individual in nature).

A comparison of Bianchi's pleadings in state court and federal court reveals that the constitutional claims and related claims in this federal suit are inextricably intertwined with the state court's denial of relief. In his state court Motion to Recall Remittitur and For Further Relief, Bianchi stated:

[T]o avoid infringement of Mr. Bianchi's due process rights and protections, this Court should recall its Remittitur, vacate the Opinion entered herein on or about May 23, 1997, assign this matter to hearing before the Court, *en banc*, or transfer the case to another District of the Court and allow the appeal to proceed as if the Opinion entered on or about May 23, 1997, had never been issued.

His federal complaint is a mirror image and seeks relief specific to his individual case:

This action seeks a declaratory judgment declaring repugnant to the Constitution of the United States, the practice of a Judge previously disqualified from hearing a matter as a Trial Court Judge from sitting in judgment of the same matter as an Appellate Court Judge; and a mandatory injunction to require the Defendants to recall the Remittitur ..., and the resetting of that matter for argument and decision after transfer of that case to a different division or Appellate District of the Court of Appeal of the State of California.

And finally, Bianchi's appellate brief in this court underscores that he seeks to overrule the state decision and to have this court order relief in the state action:

Mr. Bianchi complained that his constitutionally protected right to Due Process and, specially, his right to have his claim adjudicated by an impartial tribunal, was violated by a Judge, previously disqualified, acting as the authoring Judge of the Opinion in the appeal from the same case in which the Judge had been disqualified below and that, to remedy the deprivation of Due Process, the Court should mandatorily enjoin the panel of the Court of Appeals to reassign the case to an impartial tribunal.

Bianchi now seeks an order from us instructing the state court to do what it refused to do when he made the identical claim before that court—to reassign his case to a different panel of judges. It is difficult to imagine how any federal action could be more "inextricably intertwined" with a state court judgment than this proceeding. *See Phifer.v. City of New York*, 289 F.3d 49, 55–56 (2nd Cir.2002) (holding "[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action" (internal quotation marks omitted)).

Although Bianchi admits that he raised the same issues presented here in his motion to recall the remittitur and in his petitions before the California Supreme Court, Bianchi asserts that his due process claim is not inextricably intertwined with his state court action because the substantive issues presented in his underlying state court complaint and his federal complaint are not the same. This argument misses the mark and blurs the distinction between the *Rooker–Feldman* doctrine and the principles of preclusion.[2]

---

**2.** *See GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993) ("[B]oth [*Rooker–Feldman* and preclusion] define the respect one court owes to an earlier judgment. But the two are not co-extensive.").

As our sister circuits have observed, "we cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint." *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir.2002) (citing other circuits' authority in accord). Rather, under *Rooker–Feldman*, "we must pay close attention to the *relief* sought by the federal-court plaintiff." *Id.* Here, Bianchi seeks an order compelling the state court to recall its decision and reassign his case to be heard before a different panel of judges. *Rooker–Feldman* precludes adjudication of this claim because "the only redress [Bianchi seeks is] an 'undoing' of the prior state-court judgment—a 'particularized challenge to an adjudication against him in state court' clearly barred under *Rooker–Feldman*."[3] *Id.* at 477 (quoting *Ritter v. Ross*, 992 F.2d 750, 755 (7th Cir.1993)).

Because we cannot grant the relief Bianchi seeks without "undoing" the decision of the state court, it is immaterial that the state courts did not specify the grounds on which they denied Bianchi's claims. The silence of the California courts does not indicate that they failed to consider the constitutional claims presented to them. *See Craig*, 141 F.3d at 1355 n. 3 (applying *Rooker–Feldman* doctrine where California Supreme Court denied the petition for review without comment and without holding a hearing, concluding that "[t]he fact that the California Supreme Court denied Craig's petition for review without comment does not mean that no adjudication occurred"). To conclude otherwise would require us to assume that the "state judges [were] not ... faithful to their constitutional responsibilities." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

■ In any event, Bianchi's claims would still be barred under *Rooker–Feldman* even if the state court had not actually decided his constitutional claims. The *Rooker–Feldman* doctrine does not require us to determine whether or not the state court fully and fairly adjudicated the constitutional claim. Nor is it relevant whether the state court's decision is res judicata or creates the law of the case under state law. *See Feldman*, 460 U.S. at 488, 103 S.Ct. 1303 (recognizing distinction between *Rooker* and res judicata analysis); *Kenmen*, 314 F.3d at 478–79; *GASH Associates*, 995 F.2d at 728. Unlike res judicata, which requires courts to look to the preclusive effect of prior judgments under state law, *Rooker–Feldman* looks to federal law to determine "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment."[4]

---

**3.** Another way to look at Bianchi's claim—and one that leads us to the same result—is through the doctrine of standing. As the Tenth Circuit explained in *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir.1991), a constitutional challenge is "inextricably intertwined" with a request to set aside a state court judgment if the plaintiff would lack standing to bring the constitutional challenge on its own. Although Facio claimed, as Bianchi does here, that he was bringing a general constitutional challenge, the Tenth Circuit rejected this argument, noting that "if Mr. Facio is not able to set aside the [state court judgment] against him, he would lack standing to assert his [constitutional] claim." *Id.* This is so,

because unless the state court judgment is overturned, Facio's "only interest in [the state's] procedures is prospective and hypothetical in nature." *Id.* The same is true here.

**4.** It is immaterial that Bianchi frames his federal complaint as a constitutional challenge to the state courts' decisions, rather than as a direct appeal of those decisions. The *Rooker–Feldman* doctrine prevents lower federal courts from exercising jurisdiction over any claim that is "inextricably intertwined" with the decision of a state court, even where the party does not directly challenge the merits of the state court's decision but rather brings an indirect challenge based

*Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996). "If the injury alleged resulted from the state court judgment itself, *Rooker–Feldman* directs that the lower federal courts lack jurisdiction." *Id.* Accord *GASH Associates,* 995 F.2d at 728 (holding that *Rooker–Feldman* barred the action "because the plaintiffs' injury *stemmed from the state judgment*—an erroneous judgment, perhaps, entered after procedures said to be unconstitutional, but a judgment nonetheless.") However, "[i]f the injury alleged is distinct from [the state court's] judgment, i.e., the party maintains an injury apart from the loss in state court and not 'inextricably intertwined' with the state judgment, ... res judicata may apply, but *Rooker–Feldman* does not." *Garry,* 82 F.3d at 1365. Thus, unlike *res judicata,* the *Rooker–Feldman* doctrine is not limited to claims that were actually decided by the state courts, but rather it precludes review of all "state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *See Kenmen,* 314 F.3d at 475 (quoting *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303). Stated plainly, "*Rooker–Feldman* bars any suit that seeks to disrupt or 'undo' a prior state-

court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims." [5] *Id.* at 478, 103 S.Ct. 1303 (citing *Facio,* 929 F.2d at 544).

Our conclusion parallels the Fifth Circuit's analysis in *Howell v. Supreme Court of Texas,* 885 F.2d 308 (5th Cir.1989), a case that addressed a question very similar to that presented here. Howell appealed to the Texas Supreme Court for a writ of error after receiving adverse rulings from both the state trial court and court of appeals. *Id.* at 309–10. Along with his application to the Texas Supreme Court, Howell filed a motion asserting that Texas Rules of Appellate Procedure and the Due Process Clause required the justices to recuse themselves, either because they "harbor[ed] a personal bias or prejudice toward" him or because "the impartiality of ... [the] justices might reasonably be subject to question." *Id.* at 310 (internal quotation marks omitted).

After the Texas Supreme Court denied Howell's motion for recusal and denied his application for a writ of error, Howell filed a complaint in federal court in which he asserted that the justices' refusal to recuse themselves was a due process violation.

---

on constitutional principles. *See Feldman,* 460 U.S. at 483, 103 S.Ct. 1303. Thus, *Rooker–Feldman* bars federal adjudication of any suit in which a plaintiff alleges an injury based on a state court judgment and seeks relief from that judgment, not only direct appeals from a state court's decision. *See Garry,* 82 F.3d at 1365; *Kenmen,* 314 F.3d at 475; *Hutcherson v. Lauderdale County,* 326 F.3d 747, 755 (6th Cir.2003); *Howell v. Supreme Court of Texas,* 885 F.2d 308 (5th Cir.1989).

5. The suggestion in the concurrence that *Rooker* compels a different result is strained. In *Rooker,* the district court held that it did not have jurisdiction over any part of the suit presented to it, including the bias claim. The Supreme Court affirmed that decision in its entirety. 263 U.S. at 417, 44 S.Ct. 149. The

Supreme Court did not state or imply that the district court had jurisdiction over the bias claim. To the contrary, the Court merely chastised Rooker's counsel for including the bias claim in the brief, noting that the "facts set forth and relied upon neither support nor tend to support the charge; and we experience difficulty in reconciling its presence in the bill with the care and good faith which should attend the preparation of such a pleading." *Id.* The Court then explicitly stated that the existence of this bias claim did not change its conclusion that the district court lacked jurisdiction to review Rooker's claim, explaining that "the [bias] charge does not change the nature of the bill or require that it be given any effect which it otherwise would not have." *Id.*

*Id.* at 310–11. Noting that the bases for relief were the same as Howell asserted in state court, the district court dismissed the complaint for lack of jurisdiction. *Id.* at 311. The Fifth Circuit affirmed, explaining that Howell's due process argument "was explicit in [his] motion to recuse and was necessarily rejected by the justices in denying his motion." *Id.* at 312. "Because Howell did raise his claim in the state court, allowing a new challenge in federal district court would necessarily require review of a final state court judgment," a result prohibited by the *Rooker–Feldman* doctrine. *Id.* As the Fifth Circuit observed, "[t]o permit such a challenge would be to permit the type of review the Supreme Court rejected in *Rooker, Atlantic Coast Line,* and *Feldman.*" *Id.* at 313. The same reasoning applies here.

Our analysis also draws support from the principles of federalism and comity that underlie the *Rooker–Feldman* doctrine.[6] It is difficult to imagine what remedy the district court could award in this case that would not eviscerate the state court's judgment. Bianchi wants a new hearing with a new panel of appellate justices—and, of course, he wants a different result. We cannot fathom, however, how a federal court could order this relief and command a state court to satisfy Bianchi's demand. The integrity of the judicial process depends on federal courts respecting final state court judgments and rebuffing

de facto appeals of those judgments to federal court. The practical consequences of adopting Bianchi's view would open Pandora's box and undermine the essence of the *Rooker–Feldman* doctrine.

**AFFIRMED.**

BETTY B. FLETCHER, Circuit Judge, concurring in the judgment:

I write separately because the majority's expansive reasoning is irreconcilable with the Supreme Court's decision in *Rooker* and unnecessarily enunciates a doctrine of "appellate jurisdiction" for *Rooker–Feldman* purposes that, as I explain below, is unwarranted on the facts of this case. I concur in the judgment, however, because the record presents no affirmative evidence that the California Supreme Court's summary decision denying Bianchi's petition for a writ of mandate was not a decision on his federal due process claim. *See, e.g., Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923) ("If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction."); *General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 968 (9th Cir.1981) (federal courts are presumed to lack jurisdiction unless federal jurisdiction is shown affirmatively).

---

**6.** We acknowledge that *Rooker–Feldman* is not a constitutional doctrine. *See In re Gruntz,* 202 F.3d 1074, 1078 (9th Cir.2000) (en banc). Nonetheless, we invoke the terms "federalism" and "comity" to reflect the well established understanding that the *Rooker–Feldman* doctrine is grounded in these principles. *See Lemonds v. St. Louis County,* 222 F.3d 488, 495 (8th Cir.2000) ("*Rooker–Feldman* is ... concerned with federalism and the proper delineation of the power of the lower federal courts."); *Kenmen,* 314 F.3d at 479

(quoting *Lemonds,* 222 F.3d at 495); *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir. 2002) (explaining that the *Rooker–Feldman* doctrine is based on "comity" and "seeks to prevent state and federal courts ... [from] fight[ing] each other for control of a particular case" (alterations in original and internal quotation marks omitted)); *see also* Suzanna Sherry, *Judicial Federalism in the Trenches: The Rooker–Feldman Doctrine in Action,* 74 Notre Dame L.Rev. 1085, 1101–02 (1999).

I analyze this case differently than the majority. Bianchi's federal court case alleges that the California Court of Appeal violated his federal constitutional right to due process because the judge who authored the court's disposition in his direct appeal was statutorily disqualified from the case as a trial judge for alleged bias. Bianchi took a number of steps to rectify the problem in California's state courts. First, he asked the California Supreme Court to review the decision. It declined, holding that the time for an appeal had passed. He then asked the panel of the Court of Appeal that decided his case to recall its remittitur and to transfer the case to a panel of the court that did not include a disqualified judge. One of the judges who had been on the allegedly tainted panel rejected Bianchi's request relying solely on state-law grounds. Finally, he petitioned the California Supreme Court for a writ of mandate to order the Court of Appeal to recall its remittitur. The state Supreme Court denied Bianchi's petition without comment.

Regardless of how broadly the majority wishes the *Rooker–Feldman* doctrine to sweep, *Rooker* itself carved out a clear exception to the rule that the general jurisdictional statutes do not permit a lower federal court to adjudicate a federal-law claim that, if meritorious, overturns a state court's judgment. In *Rooker*, the Supreme Court noted that the plaintiff alleged that the state Supreme Court's judgment was void because one of the judges had an improper "interest in the case which worked his disqualification." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416–17, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Unlike the other claims in the case, the Supreme Court reached the merits of the judicial disqualification claim. The Court fully and extensively discussed the allegation of judicial bias. Only after concluding that the claim was without merit, did the Court dismiss the claim and hold that "the facts set forth and relied upon neither support nor tend to support the charge." *Id.* at 417, 44 S.Ct. 149. That the Court chose to chastise *Rooker*'s counsel for bringing a baseless claim of judicial bias does not alter the fact that the Court plainly dismissed the charge only after considering it's merit; the Court's observation that "the charge does not change the nature of the bill or require that it be given any effect which it otherwise would not have," *id.*, must be read in light of the evaluation of the claim itself, which takes up almost a full third of the opinion in *Rooker.* The majority's opinion is wrong in asserting otherwise.

Because this aspect of *Rooker* has not been overruled, an attack on the authority of a state court to adjudicate a case because a state court judge should have been disqualified is not subject to dismissal under the *Rooker–Feldman* doctrine. Congress has not altered the jurisdictional statutes to abrogate this aspect of *Rooker.* There is nothing in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), that overrules *Rooker* on this point—*Rooker* is cited once in *Feldman,* and simply for the proposition that lower federal courts generally may not review state court judgments directly.[1] And none of the Supreme Court's other cases that discuss *Rooker* purports to overrule any aspect of it either. *See Verizon Maryland, Inc. v. Public Service Comm'n*, 535 U.S. 635, 122 S.Ct. 1753, 1759 n. 3, 152 L.Ed.2d 871; *City of Chicago v. International College of Surgeons,*

---

**1.** Indeed, it would be extraordinary if *Feldman* even reached the issue of whether federal judicial disqualification claims against state judges are barred because the question of improper judicial bias was not presented in *Feldman.*

522 U.S. 156, 177, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (Ginsburg, J., dissenting); *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *Heck v. Humphrey,* 512 U.S. 477, 485–86, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Howlett ex rel. Howlett v. Rose,* 496 U.S. 356, 370 n. 17, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Martin v. Wilks,* 490 U.S. 755, 783 n. 21, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989); *ASARCO Inc. v. Kadish,* 490 U.S. 605, 606–07, 622, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989); *Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 7–10, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *id.* at 25, 107 S.Ct. 1519 (Marshall, J., concurring in the judgment); *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 826–27, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); *Doe v. Delaware,* 450 U.S. 382, 386, 101 S.Ct. 1495, 67 L.Ed.2d 312 (1981); *Florida State Bd. of Dentistry v. Mack,* 401 U.S. 960, 961, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971) (White, J., dissenting from denial of certiorari); *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 283, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). This court may not assume that the Supreme Court has abandoned its precedent without a plain signal from that court. *See Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."). And in determining whether the Supreme Court has overruled itself, we may not rely on other lines of precedent from the Supreme Court. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

Accordingly, if Bianchi had come directly to federal court in a § 1983 action to challenge the California Court of Appeal's disposition of his direct appeal, his claim could not be dismissed under *Rooker–Feldman.* Bianchi, however, did not come straight to federal court, but sought to vindicate his federal rights in state court. He sought relief from the same court that allegedly violated his rights, and he twice sought relief from the California Supreme Court.

Bianchi's attempt to have the Court of Appeal recall its remittitur does not bar his federal court suit under *Rooker–Feldman* for the simple reason that the Court of Appeal's denial of relief is allegedly tainted by judicial bias, just as was its initial disposition of his direct appeal.

However, Bianchi does not allege that the state Supreme Court's justices should have been recused.[2] Accordingly, the principle that a challenge to the jurisdiction of a state court to conduct proceedings when its judges should have been recused for bias does not apply to the California Supreme Court's decisions in this case.

There is no doubt that Bianchi presented the substance of his federal due process claim regarding the Court of Appeal's disposition of his appeal to the state Supreme Court when he petitioned for a writ of mandate. Despite the state Supreme Court's summary dismissal of that petition, we assume that the state court considered the merits of Bianchi's federal claim since Bianchi presented no affirmative evidence to the contrary. *Cf. Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (Supreme Court assumes that a state court decision does not rest on an

---

**2.** In this, of course, Bianchi's case differs from that of Rooker. *See* 263 U.S. at 415–16,

44 S.Ct. 149.

adequate, independent state ground absent a clear statement to the contrary); *but cf. Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (federal court on habeas review looks through unreasoned state court decisions to the last reasoned decision to determine whether state courts ruled on federal or state grounds).

Regardless of how broad or narrow the circumstances in which adjudication by a lower federal court is an improper exercise of appellate jurisdiction for *Rooker–Feldman* purposes, it is plain that review by a federal district court of a state Supreme Court's decision on the merits of a federal issue raised and presumed decided by the state court (where no improper bias is asserted) is an exercise of appellate jurisdiction. As such, it is barred by the *Rooker–Feldman* doctrine, and that should end this court's analysis of Bianchi's case.[3]

However the majority goes on to enunciate a sweeping doctrine of "appellate jurisdiction" for *Rooker–Feldman* purposes. The majority relies almost exclusively on analytically confused authority from other circuits to create a standardless test for improper "appellate jurisdiction" that takes into account the relief a plaintiff seeks in federal court, whether the plaintiff has standing to bring a constitutional challenge on its own, a new federal common law of res judicata that is unmoored from any congressional specification of the limits of preclusion doctrine,[4] and general considerations of comity and federalism. Moreover, in holding that it is irrelevant whether the state court affords a litigant a full and fair adjudication of federal claims, the majority plainly disregards the Supreme Court's language in *Rooker* that suggests, to the contrary, that the adequacy of the process afforded by state courts plays some role in whether federal court adjudication is barred as an impermissible appeal. *See Rooker,* 263 U.S. at 414, 44 S.Ct. 149 ("It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject-matter and the parties, that a full hearing was had therein, that the judgment was responsive to the issues."). The majority's disquisition does not resolve confusion about the proper application and scope of the *Rooker–Feldman* doctrine, but will leave litigants and our district courts, if anything, more confused.

In this case, we need not decide whether the correct yardstick by which to decide if a federal case is an improper appeal of a state court decision is the relief sought, the claims asserted, or the injury alleged. Those questions are simply not presented.

In sum, I conclude that Bianchi's case is barred because he seeks to have the feder-

---

**3.** Indeed, there is absolutely no need to announce any theory of improper federal "appellate jurisdiction" over the California Court of Appeal's decision in this case because Bianchi's petition to the California Supreme Court for a writ of mandate raised and is presumed to have decided the federal question presented here. The majority's analysis is flawed because it assumes that it is the Court of Appeal's decision that is before us, not the state Supreme Court's.

**4.** Congress mandated that federal courts look to state preclusion law. It is not the force of state law that limits federal court consider-

ation of claims that were decided in state courts. *See* 28 U.S.C. § 1738.

In this case, the defendants never raised—and therefore waived—any claim that Bianchi's claims were barred by res judicata or collateral estoppel. Nonetheless, it appears as though the majority has permitted the defendants a second bite at the proverbial apple by including some amorphous form of these preclusion defenses in its test to determine whether the federal court adjudication of Bianchi's case is an improper appeal of a state court decision.

al district court overturn the California Supreme Court's decision on his federal due process claim. I do not agree that *Rooker–Feldman* would bar his claims had he come directly to federal court, and so am unable to concur in the majority's analysis. I respectfully concur only in the judgment.