FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 15 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MURRAY HOOPER,<br><br>　　　　Plaintiff-Appellant,<br><br>　v.<br><br>MARK BRNOVICH, Attorney General of Arizona; MICHAEL SULLIVAN, Police Chief for the City of Phoenix,<br><br>　　　　Defendants-Appellees. | No.　22-16764<br><br>D.C. No. 2:22-cv-01923-SMM<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Argued and Submitted November 15, 2022
San Francisco, California

Before: Jacqueline H. Nguyen, Mark J. Bennett, and Ryan D. Nelson, Circuit Judges.

Per Curiam Opinion

PER CURIAM:

The State of Arizona plans to execute Murray Hooper on Wednesday, November 16, 2022. On September 22, 2022, in Maricopa County Superior Court, Hooper moved under state law for an order permitting him to conduct DNA testing and fingerprint analysis on evidence found at the crime scene more than forty years ago. *See* Ariz. Rev. Stat. § 13-4240 (DNA testing); *id.* § 13-4241 (other forensic testing). The superior court denied relief in an October 21, 2022 order. Hooper sought review of this order via a special action petition in the Arizona Supreme Court. The state supreme court accepted jurisdiction and affirmed the superior court's ruling in a November 10, 2022 order.

Hooper then commenced this federal lawsuit under 42 U.S.C. § 1983. He seeks a declaratory judgment that the Arizona statutes providing for forensic testing of DNA and other evidence are unconstitutional as applied to him as well as an injunction ordering defendants to permit him to conduct the forensic testing. He moved for a preliminary injunction prohibiting his execution until he obtains this relief. The district court denied the injunction, and Hooper appeals.

We conclude that the district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine because this action amounted to an improper appeal

2

of the state courts' judgment.[1]  Therefore, we vacate the district court's order denying the preliminary injunction and remand with instructions to dismiss.

## I.

We have previously set forth the facts and procedural history of this case, *see Hooper v. Shinn*, 985 F.3d 594 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 1376 (2022), and we do not repeat them in detail here.  On the evening of December 31, 1980, three armed intruders forced their way into Pat and Marilyn Redmond's Phoenix home, killing Pat along with Marilyn's mother, Helen Phelps, and shooting Marilyn in the head in an unsuccessful attempt to kill her.  Although "overwhelming evidence" supports the jury's finding that Hooper was one of the three intruders, *id.* at 617, he maintains his innocence.

## A.

In 2000, Arizona amended its criminal code to provide a mechanism whereby a person who has received a felony sentence, under certain circumstances, can obtain forensic DNA testing of evidence related to the investigation or prosecution of his case.  Such a person may petition the court for this relief "[a]t any time."  Ariz. Rev. Stat. § 13-4240(A).  If the petitioner makes certain showings and the prosecutor has notice and an opportunity to respond, then the court either

---

[1] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

"shall" or "may" order the DNA testing, *id.* § 13-4240(B), (C), depending on the strength of the petitioner's showing as to the evidence's materiality.[2]

If the petitioner shows a "reasonable probability" that he "would not have been prosecuted or convicted if exculpatory results had been obtained through [DNA] testing," *id.* § 13-4240(B)(1), then the court "shall order" the testing. *Id.* § 13-4240(B). If the petitioner cannot make that showing, the court still "may order" testing if the petitioner shows a reasonable probability that either his "verdict or sentence would have been more favorable if the results of [DNA] testing had been available at the trial," *id.* § 13-4240(C)(1)(a), or "[DNA] testing will produce exculpatory evidence." *Id.* § 13-4240(C)(1)(b).

Last year, the Arizona legislature added a general provision for postconviction forensic testing using newly available techniques. *See* Ariz. Rev. Stat. § 13-4241. This statute is modeled on the statute for DNA testing but provides less flexibility as to the materiality showing. The petitioner *must* show a "reasonable probability" that he "would not have been prosecuted or convicted if exculpatory results had been obtained through the new forensic testing."

---

[2] In all cases, the petitioner must show that the evidence "is still in existence and is in a condition that allows [DNA] testing to be conducted," *id.* § 13-4240(B)(2), (C)(2), and that it "was not previously subjected to [DNA] testing or was not subjected to the testing that is now requested and that may resolve an issue not previously resolved by the previous testing," *id.* § 13-4240(B)(3), (C)(3). These requirements are not at issue here.

4

*Id.* § 13-4241(B)(1). If the petitioner satisfies this and the statute's other requirements, then the court "shall order" the new testing. *Id.* § 13-4241(B). Unlike the DNA-specific statute, the general statute does not grant courts the discretion to order testing when the petitioner makes only a lesser showing of materiality.

**B.**

Hooper moved under these two statutes to test approximately twelve fingerprints and a bloody kitchen knife found at the Redmond home. He argued that analyzing the fingerprints in local and national databases could have "linked an alternative suspect to the crime." He similarly argued that DNA testing of any biological material on the knife could "identify the actual perpetrators and undermine the integrity of [his] convictions."

The Maricopa County Superior Court denied Hooper's motion for fingerprint testing based on a finding that "there is no 'reasonable probability . . . that [he] would not have been prosecuted or convicted if exculpatory results had been obtained through the new forensic testing.'" Although the superior court agreed with Hooper about the "absence of physical evidence" connecting him to the murders, the court found that a "significant amount" of other evidence— including Marilyn's identification of Hooper—shows that he committed them. In light of this evidence, including evidence that the perpetrators wore gloves, the

5

court reasoned that whatever fingerprint testing might reveal, it would not have been reasonably likely to have affected the outcome. For similar reasons, the court found that Hooper was not entitled to mandatory DNA testing under section 13-4240(B) or discretionary DNA testing under section 13-4240(C).

In affirming these rulings, the Arizona Supreme Court rejected Hooper's argument that the superior court had placed undue reliance on the overwhelming evidence of Hooper's guilt. The state supreme court concluded that "the superior court applied the proper analysis" when it relied on the "compelling and consistent" trial testimony, corroborated by circumstantial and other evidence, in finding there was not a reasonable probability that Hooper would have avoided prosecution or conviction with exculpatory evidence from forensic testing. The supreme court explained that "exculpatory" evidence in this context means "someone else's fingerprints [or DNA] at the crime scene." Because the superior court provided "a reasonable explanation about why another person's DNA may have been on the knife" and why even fingerprint evidence that was "inconsistent with the State's version of the facts" did not outweigh the other evidence, the supreme court found no abuse of discretion.

## C.

Hooper filed this § 1983 action against the Arizona Attorney General and the Phoenix Chief of Police in their official capacities "to challenge the

6

constitutionality of the [forensic testing] statutes as applied by the State of Arizona." He alleges that defendants' "continued refusal to allow [him] to test key evidence in their possession denies him due process of law and access to the courts and violates his Eighth Amendment right to be free from cruel and unusual punishment."

Hooper moved for a preliminary injunction to prohibit his execution before he obtains the DNA and fingerprint evidence that he maintains will exonerate him. The State argued, among other things, that *Rooker-Feldman* bars Hooper from litigating his claims in the district court. The district court concluded that *Rooker-Feldman* does not apply but denied the motion for a preliminary injunction on the ground that Hooper did not establish a likelihood of success on the merits of his due process claim.

## II.

Although the State does not reassert its *Rooker-Feldman* argument in its appellate brief,[3] "we have an independent obligation to determine that subject matter jurisdiction exists both in this court and in the district court." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1), which encompasses review of the

---

[3] We asked counsel to address this issue at oral argument. Counsel for the State maintained that "the district court did not have jurisdiction."

district court's "authority to rule on a party's motion for a preliminary injunction." *Meredith v. Oregon*, 321 F.3d 807, 816 (9th Cir. 2003); *see also Hall v. U.S. Dep't of Agric.*, 984 F.3d 825, 834 (9th Cir. 2020) (considering federal subject matter jurisdiction before addressing the merits of appeal from order denying preliminary injunction). While "we ordinarily review the grant or denial of injunctive relief for abuse of discretion, here the issue is jurisdiction which we review de novo." *Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1069 (9th Cir. 2010) (internal citation omitted); *see also Benavidez v. County of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021).

### III.

### A.

Under the *Rooker-Feldman* doctrine, "a state-court decision is not reviewable by lower federal courts." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). This doctrine bars a federal district court from exercising subject matter jurisdiction "not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Morrison v. Peterson*, 809 F.3d 1059, 1069–70 (9th Cir. 2015) (quoting *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012)).

"To determine whether an action functions as a de facto appeal, we 'pay close attention to the *relief* sought by the federal-court plaintiff.'" *Cooper*, 704

8

F.3d at 777–78 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)). A "forbidden de facto appeal under *Rooker-Feldman*" arises "when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). But *Rooker-Feldman* "does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court." *Cooper*, 704 F.3d at 778 (quoting *Skinner*, 562 U.S. at 532). Thus, "a statute or rule governing the [state court's] decision may be challenged in a federal action." *Skinner*, 562 U.S. at 532.

Where the federal plaintiff "complain[s] of harm caused by a state court judgment that directly withholds a benefit from . . . [him] based on an allegedly erroneous ruling by that court," *Noel*, 341 F.3d at 1163, the jurisdictional inquiry hinges on whether the constitutional claims presented to the district court "are *inextricably intertwined* with the state court's [ruling]." *Cooper*, 704 F.3d at 778 (quoting *Feldman*, 460 U.S. at 482 n.16). Claims are inextricably intertwined if "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Id.* at 779 (quoting *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002)).

**B.**

Hooper primarily claims a denial of procedural due process, alleging that he "was denied access to DNA and fingerprint testing of evidence due to the [state courts'] unreasonably restrictive and unconstitutional interpretations of the [state] statutes." He seeks orders "directing that the fingerprint evidence collected at the crime scene be run through local and national databases" and "requiring [d]efendants to release the DNA evidence to [him] under a reasonable protocol . . . so that [he] can have the evidence tested at his own expense." He further seeks a court declaration that he "is entitled" to this testing. Thus, the relief he seeks would effectively reverse the state courts' decision that he is not entitled to this testing.

Hooper's claim "is a pure horizontal appeal of the state court's decision." *Id.* The entire premise of this lawsuit, as he summarizes it, is that "[his] motion for DNA and fingerprint testing should have been granted." He criticizes "[t]he standard applied by the superior court" as "severely flawed" and "not the [statutory] test." He alleges that the state courts interpreted Arizona law "unreasonably" because, "[c]ontrary to the state court's construction in the present case, the statutes do not require" such a demanding showing. And he alleges that the state courts' interpretation "thwarted" the statutory purpose. In short, he claims that the state courts decided his case incorrectly.

10

As in *Cooper*, the complaint here "fundamentally mischaracterizes the state court's holding, attempting to cast the claim as [a constitutional] attack on the state court's statutory construction." *Id.* The *Cooper* plaintiff alleged that the California court's interpretation of that state's analogue to section 13-4240 "made it impossible for [him] to utilize [the statute] to prove that he was framed" and "deprive[d] [him] of his liberty and property interests in [the statute] without due process of law." *Id.* Hooper similarly alleges that the Arizona courts "impose[d] an unconstitutional barrier" to his accessing exculpatory forensic evidence "by reading into the statutes a near impossible requirement—that [he] must prove his innocence as a precondition of obtaining DNA and fingerprint testing" when such testing "[is] the only means in some cases," including his, "to exonerate the wrongly convicted."[4]

The state courts "did not render a categorical holding," *id.* at 779, that overwhelming evidence of guilt at trial precludes a convicted person from obtaining newly available forensic testing. They merely held that where overwhelming evidence at trial identified the convicted person as the perpetrator

---

[4] Arizona law does not provide an unfettered "right to postconviction advanced forensic testing." As the Supreme Court has explained, "all state statutes impose conditions and limits on access to . . . evidence" for forensic testing, and a state does not violate an inmate's procedural due process rights merely by denying him access to the evidence "for a perfectly adequate reason" under state law. *Dist. Att'y's Off. v. Osborne*, 557 U.S. 52, 71 (2009).

and the desired forensic evidence, even if favorable, would not reasonably call the trial evidence into question, the state statutes do not authorize the discovery. The Arizona Supreme Court repeatedly stated that the analysis required "coupl[ing]" or "weigh[ing]" the substantial evidence of Hooper's guilt with a "reasonable explanation" for why another person's fingerprints or DNA might have been in the Redmond home. That holding does not implicate due process. *See Osborne*, 557 U.S. at 62 ("DNA testing alone does not always resolve a case. Where there is enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent. The availability of technologies not available at trial cannot mean that every criminal conviction . . . is suddenly in doubt." (internal citation omitted)); *cf. Bible v. Schriro*, 651 F.3d 1060, 1065 (9th Cir. 2011) (per curiam) (holding applicant for second or successive habeas petition could not establish actual innocence through proposed DNA testing because, "[w]hatever the DNA testing . . . might reveal, it could not refute the overwhelming inculpatory evidence presented at . . . trial"); *Landrigan v. Trujillo*, 623 F.3d 1253, 1257 (9th Cir. 2010) (explaining that test results excluding the inmate as a contributor of any of the DNA on the victim's jeans, blanket, and

curtain "do not show that [the inmate] was not, at a minimum, a major participant in [the victim's] death").[5]

Hooper's claim differs in critical ways from those in *Skinner* and *Morrison*, where *Rooker-Feldman* did not apply. In *Skinner*, the plaintiff "[did] not challenge . . . the decisions reached by the [state court] in applying [the state statute] to his motions" for DNA testing and challenged only the constitutionality of the statute "as construed" by the state court. *Skinner*, 562 U.S. at 530–32. Here, Hooper does not challenge the state statute as written or as actually construed by the state courts; he merely disagrees with the way in which the state courts applied the statute to the facts of his case.

In *Morrison*, the plaintiff argued that the California statute violated procedural due process "as applied in those cases . . . where a petitioner's motion must be adjudicated by a judge who did not preside over the petitioner's original trial." *Morrison*, 809 F.3d at 1069–70. The plaintiff challenged the statute's

---

[5] At oral argument, the State urged us to rule in the alternative that even if Hooper's claims are not barred by *Rooker-Feldman*, he failed to show a likelihood of success on the merits. The two analyses are obviously related. As the district court found, the state court's denial of forensic testing did not deprive Hooper of due process, in part because "[t]he state court did not require [him] to establish actual innocence to qualify for forensic testing under the statute." Hooper's counsel acknowledged that the Arizona Supreme Court recited the correct standard. And in fact the state supreme court applied that standard by balancing the most exculpatory results that testing might reveal with the overwhelming evidence of Hooper's guilt.

constitutionality based on an alleged procedural defect that was "not limited to the particulars of [his] situation." *Id.* at 1070. Crucially, the plaintiff "[did] not seek an order that *he* be allowed DNA testing," *id.* (emphasis added), contrary to what the state courts had ruled, *id.* at 1063–64, but that is precisely what Hooper seeks here.

Because Hooper "in fact challenges the particular outcome in his state case, 'it is immaterial that [he] frames his federal complaint as a constitutional challenge to the state court's decision, rather than as a direct appeal of that decision.'" *Cooper*, 704 F.3d at 781 (cleaned up) (quoting *Bianchi*, 334 F.3d at 900 n.4). The *Rooker-Feldman* doctrine bars federal courts from adjudicating his procedural due process claim. *See id.*

Hooper's remaining constitutional claims are "variation[s] on his first claim." *Id.* In his second claim, he asserts that the Arizona courts "impose[d] an unreasonable barrier to court access not contemplated by the legislature by reading into these statutes an impossible hurdle to obtaining fingerprint and DNA testing results," depriving him "of meaningful access to post-conviction procedures provided by Arizona law . . . in violation of the Petition Clause of the First Amendment to the United States Constitution." In his third claim, he asserts that "Arizona's construction of these statutes to deny [his] basic procedural rights to access fingerprint and DNA testing to demonstrate his innocence before he is

14

executed violates the Eighth Amendment." And in his fourth claim, he asserts that defendants violated the Due Process Clause of the Fourteenth Amendment "[b]y refusing to release the physical evidence for fingerprint and DNA analysis, and thereby preventing [him] from gaining access to evidence that could exonerate him." These claims all seek to undo the state courts' judgment and are similarly barred by *Rooker-Feldman*.

### IV.

Because the district court lacked subject matter jurisdiction over this suit, we vacate its order denying the preliminary injunction and remand with instructions to dismiss the suit.[6] *See Ass'n of Flight Attendants v. Mesa Air Grp., Inc.*, 567 F.3d 1043, 1046 (9th Cir. 2009).

**VACATED and REMANDED.**

---

[6] We deny Hooper's motion for stay of execution (docket entry no. 7) as moot. *See Mitchell v. United States*, 971 F.3d 1081, 1085 n.6 (9th Cir. 2020) (per curiam).