**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEVIN COOPER,
*Plaintiff-Appellant*,

v.

MICHAEL A. RAMOS, District
Attorney for the County of San
Bernardino; STEVEN MYERS, Senior
Criminalist with the California
Department of Justice DNA
Laboratory; DANIEL GREGONIS,
Criminalist at the SBCSD; FRED
ECKLEY; KEN SCHRECKENGOST,
SBCSD Deputy; WILLIAM BAIRD,
SBCSD Deputy; IRVIN SHARP,
SBCSD Deputy; HECTOR OCAMPO,
SBCSD Detective; GALE DUFFY,
SBCSD Deputy; DAVID
STOCKWELL,
*Defendants-Appellees*.

No. 11-57144

D.C. No.
2:11-cv-03942-
SVW-OP

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
August 20, 2012—Seattle, Washington

Filed December 27, 2012

Before: M. Margaret McKeown, Ronald M. Gould,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's dismissal of a complaint brought by Kevin Cooper, who was convicted of murder and sentenced to death in 1985, challenging a state court's denial of his request to obtain additional DNA testing pursuant to a state statute.

Cooper alleged that he was the target of a long-running conspiracy, involving members of the San Bernardino County Sheriff's Department and others, to manipulate evidence and prevent him from proving that he was framed. The district court dismissed the complaint without prejudice, to the extent that Cooper was able to plead viable claims that were not barred by the *Rooker-Feldman* doctrine.

The panel first determined that the district court intended its order to be final and appealable and therefore the panel had jurisdiction to consider the ruling. The panel then held that the district court properly dismissed the complaint under

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the *Rooker-Feldman* doctrine because the federal courts lacked subject matter jurisdiction over Cooper's first claim, which sought federal relief from the state court's determination in the DNA proceeding, and over his second and third claims, which were inextricably intertwined with the first. The panel further held that the district did not err in implicitly denying Cooper's request to amend the complaint.

**COUNSEL**

L. David Russell and Kenneth K. Lee, Jenner & Block LLP, Los Angeles, California, for Plaintiff-Appellant.

Shannon L. Gustafson, Lynberg & Watkins, Orange, California for Defendants-Appellees Michael A. Ramos, Daniel Gregonis, Fred Eckley, Ken Schreckengost, William Baird, Irvin Sharp, Hector Ocampo, Gale Duffy, and David Stockwell; Kristin G. Hogue, Office of the Attorney General, San Diego, California, for Defendant-Appellee Steven Myers.

**OPINION**

McKEOWN, Circuit Judge:

Kevin Cooper was convicted of four counts of first-degree murder and sentenced to death in 1985. Since then his case has traveled up, down and around the federal and state judiciaries. Most recently, Cooper filed suit in federal district court in California challenging a state court's denial of his request to obtain additional DNA testing pursuant to a state statute. In the complaint, Cooper alleges that he is the target of a long-running conspiracy, involving members of the San

Bernardino County Sheriff's Department and others, to manipulate evidence and prevent him from proving that he was framed. The district court dismissed without prejudice on the basis that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine because Cooper's federal suit constituted a de facto appeal of the state court judgment. We agree that his complaint was properly dismissed. Under the *Rooker-Feldman* doctrine, the federal courts lack subject matter jurisdiction over his first claim, which sought federal relief from the state court's determination in the DNA proceeding, and over his second and third claims, which are inextricably intertwined with the first. We further hold that the district did not err in implicitly denying Cooper's request to amend the complaint.

## BACKGROUND

Cooper has vigorously pursued his postconviction options. He has appeared before multiple three-judge panels and an en banc panel of this court, as well as various federal district and state courts. While his efforts have questioned the credibility of the police work and the forensic evidence, they have failed to result in a reversal of his conviction. The brutal facts and prolonged procedural history are detailed in our previous opinion and are not repeated here. *See Cooper v. Brown*, 510 F.3d 870 (9th Cir. 2007).

In 2010, several years after denial of his federal habeas petition, Cooper filed a motion in San Diego Superior Court under California Penal Code § 1405. Section 1405, entitled Motion for DNA Testing, provides convicted felons a right to file a motion for post-conviction DNA testing, and sets out eight detailed fact-based criteria for granting the motion. Cal. Penal Code § 1405. Cooper sought further post-conviction

DNA testing of three pieces of evidence, all of which had been extensively tested and unsuccessfully challenged in previous proceedings.

In rejecting Cooper's request for testing, the Superior Court reviewed in detail the tests that had been conducted on each piece of evidence, considered the requirements for further testing under § 1405, and rejected Cooper's claims that the prosecution and other public officials tampered with the evidence of the crime. The court labeled as "speculation" Cooper's "unspecified tampering theory." The court also found that Cooper had failed to show that use of a different testing method, the MiniFiler kit, "would provide results that are reasonably more discriminatory and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results" as required by § 1405. Ultimately the court concluded that Cooper "has not demonstrated there is a reasonable probability he would have had a more favorable outcome if the requested DNA results had been available."

Rather than filing a petition for review with the California Supreme Court, Cooper filed a complaint in federal court against a host of public officials— Michael A. Ramos, Daniel Gregonis, Fred Eckley, William Baird, Hector O'Campo, Gail Duffy, David Stockwell, and Steven Myers—alleging violations of 42 U.S.C. § 1983. Cooper alleged that he is the target of a long-running conspiracy to manipulate evidence and prevent him from proving that he was framed. He advanced three claims: (1) denial of procedural due process in the trial court based on the § 1405 proceedings (against San Bernardino District Attorney Michael Ramos and Steven Myers, senior criminalist); (2) civil conspiracy to deny procedural due process based on his § 1405 request (against

Ramos and Myers); and (3) civil conspiracy to deny substantive due process based on tampering with and falsifying evidence (against all defendants). Characterizing Cooper's suit as a de facto appeal of the state court judgment, the district court dismissed the complaint without prejudice for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.

## ANALYSIS

## I. AVAILABILITY OF APPELLATE REVIEW

The threshold issue on appeal is whether we have jurisdiction to consider the district court's ruling. This question arises because the district court dismissed the complaint "without prejudice, to the extent that Plaintiff is able to plead viable claims that are not barred by *Rooker-Feldman*," but the court neither granted nor denied Cooper's request for leave to amend. *See WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (noting the difficulty of determining the finality of a district court's order "when a complaint is simply dismissed without prejudice").

This case stands in contrast to *WMX Technologies*, where a dismissal was not final for purposes of appeal because the district court explicitly granted the request for leave to amend. Here, where there is no order with respect to the request for leave to amend, our precedent requires an evaluation of the district court's intent: "Ordinarily an order dismissing the complaint rather than dismissing the action is not a final order and thus not appealable. However, if it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable." *Knevelbaard Dairies v. Kraft Foods, Inc.*,

232 F.3d 979, 983 (9th Cir. 2000) (alteration, internal quotation marks, and citation omitted).  In *Knevelbaard Dairies,* for example, the plaintiff opposed motions to dismiss its complaint and, alternatively, asked for leave to amend. We held that the court's order granting the motions to dismiss, without mention of leave to amend, "necessarily entailed a denial of the alternative request for leave to amend and a determination . . . that the pleading could not possibly be cured by the allegation of other facts."  *Id.* (internal citation and quotation marks omitted).

Although here the district court added that it dismissed "without prejudice" and "to the extent" that Cooper could plead non-barred claims, these qualifiers do not overcome the inference that the district court implicitly denied the request to amend and intended to finally dispose of the action.  *See Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1514 (9th Cir. 1987) ("Failure to allow leave to amend supports an inference that the district court intended to make the order final."). Unlike the Rule 12(b)(6) dismissal for failure to state a claim in *Knevelbaard Dairies*, the district court dismissed this case under Rule 12(b)(1) for lack of subject matter jurisdiction.  It is not uncommon for courts to frame a jurisdictional dismissal as being "without prejudice" because the merits have not been considered.  *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court.").

The district court's reference to potential "viable claims that are not barred by *Rooker-Feldman*" does not necessarily reflect that the court was inviting amendment rather than merely leaving open the possibility that Cooper might be able

to bring a separate, meritorious suit. The rationale set out in the order strongly suggests that the court rejected the viability of any amendments. The court specifically considered Cooper's argument that, although not pled as such, his suit posed an independent, general challenge to the constitutionality of § 1405. It reasoned that, even if the complaint could be construed to encompass that claim, the claim "must fail" because no California state court had construed the statute to foreclose access to DNA testing for prisoners who alleged they were framed. *See Knevelbaard Dairies*, 232 F.3d at 983 (finding "inference that finality was intended . . . especially strong" where "[n]o one has suggested an amendment that could change the district court's ruling").

That the court considered the case closed is also evinced by the clerk's definitive termination of the case. As in *Knevelbaard Dairies*, "[t]he clerk's docket entry describe[d] the dismissal order as 'terminating case.'" *Id.* at 983. A "JS-6" code, indicating case termination, appears on both the order and the docket entry. Clerk entries, albeit "ministerial acts" distinct from the "the judicial act of rendering judgment," *Lockwood v. Wolf Corp.*, 629 F.2d 603, 608 n.2 (9th Cir. 1980), may be instructive. *See Knevelbaard Dairies*, 232 F.3d at 983. Though a docket entry alone is not dispositive, the termination of the case, combined with the inference of finality arising from the court's failure to grant leave to amend and the court's rejection of a potential, alternative claim, lead us to conclude that the court intended its order to be final and appealable. Accordingly, we have jurisdiction under 28 U.S.C. § 1291.

## II. JURISDICTIONAL BAR TO COOPER'S CLAIMS

The *Rooker-Feldman* doctrine instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts. Congress, in 28 U.S.C. § 1257, vests the United States Supreme Court, not the lower federal courts, with appellate jurisdiction over state court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam). Accordingly, "[r]eview of such judgments may be had only in [the Supreme] Court." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the "de facto equivalent" of such an appeal. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003).

To determine whether an action functions as a de facto appeal, we "pay close attention to the *relief* sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (internal quotation marks and citation omitted). "It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel*, 341 F.3d at 1163; *see also Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011) (emphasizing that the *Rooker-Feldman* doctrine is limited to cases "brought by state-court losers . . . inviting district court review and rejection of the state court's judgments") (internal quotation marks, alteration, and citation omitted).

We recognize that the Supreme Court has been very sparing in its invocation of the doctrine, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)

(emphasizing the "narrow ground occupied by *Rooker–Feldman*"), so we are careful not to sweep too broadly. The doctrine does not preclude a plaintiff from bringing an "independent claim" that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court. *Skinner*, 131 S. Ct. at 1297. The Court has found claims barred under *Rooker-Feldman* only in the two flagship cases that gave the doctrine its name. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Feldman*, 460 U.S. 462. In both cases the Court reasoned that the plaintiffs, having lost in state court, "essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments." *Exxon Mobil*, 544 U.S. at 283. A review of the *Feldman* case provides an instructive framework for evaluating Cooper's claims.

In *Feldman*, two graduates of unaccredited law schools petitioned a local court for a waiver to permit them to sit for the bar. When their antitrust, Fifth Amendment and general fairness/due process claims were rejected by that court, they filed suit in federal court. The Supreme Court deemed the action a de facto appeal to the extent that it sought review of the local court's denial of the petitions. On the other hand, as we recounted in *Noel*, the Supreme Court allowed the "challenge to the local court's legislative act of promulgating its rule" prohibiting the graduates from sitting for the bar, reasoning that it "was a challenge to the *validity* of the rule rather than a challenge to an *application* of the rule." *Noel*, 341 F.3d at 1157 (emphasis added). The Court further reasoned that, "[i]f the constitutional claims presented to a United States District Court are *inextricably intertwined* with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the

District Court is in essence being called upon to review the state court decision," which "the District Court may not do." *Feldman*, 460 U.S. at 482 n.16 (emphasis added and citation omitted). In Feldman's case, however, the Court found that the challenge to the validity of the rule constituted "a general attack on [its] constitutionality" that was independent of, not intertwined with, the local court's decision. *Id.* at 487.

Our circuit has emphasized that "[o]nly when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play." *Noel,* 341 F.3d at 1158. In identifying what issues are inextricably intertwined with a forbidden appeal, the following succinct guidance from Justice Marshall is useful:

> While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring). Thus, we have found claims inextricably intertwined where "'the relief requested in the federal action would effectively reverse the state court decision or void its

ruling.'" *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)).

With these principles in mind, we now consider whether *Rooker-Feldman* bars Cooper's federal claims.

### A. Claim One – Challenge to state court decision on § 1405 motion

Cooper's first claim is a pure horizontal appeal of the state court's decision. Cooper's complaint fundamentally mischaracterizes the state court's holding, attempting to cast the claim as an attack on the state court's statutory construction of § 1405. A review of Cooper's grievances makes clear, however, that his complaint in actuality challenges the fact-specific determination in his case.

The first claim states:

> [B]y finding that allegations of tampering "cannot serve as a basis for satisfying the specific statutory requirements" of § 1405, and by holding that the potential to identify the minor contributor(s) to the DNA samples is of no "practical significance" and cannot satisfy the condition of § 1405(f)(6)(B), the Superior Court of the State of California has made it impossible for Plaintiff to utilize § 1405 to prove that he was framed. This interpretation deprives Plaintiff of his liberty and property interests in § 1405 without due process of law.

The state court, however, did not render a categorical holding that tampering allegations can never serve as a basis for § 1405 relief. Cooper's complaint omits crucial parts of the quoted decision. After carefully addressing Cooper's allegations of tampering the Superior Court held:

> Defendant *has not produced any evidence* to support his unspecified tampering theory. *Mere speculation that evidence tampering has occurred* is not a sufficient basis for good cause discovery. It also cannot serve as the basis for satisfying the specific statutory requirements for post-conviction DNA testing.

The Superior Court firmly rested its decision on the inadequacy of Cooper's evidence. In his § 1983 suit, Cooper "essentially invite[s] [a] federal court[] of first instance to review and reverse [his] unfavorable state-court judgment[]." *Exxon Mobil*, 544 U.S. at 283. This invitation is laid bare by other allegations in the first claim. Cooper alleges that he "met all of the factors enumerated in § 1405," and he requests relief that includes "[a] declaratory judgment that [he] is entitled to access and to perform DNA testing on the evidence requested in his 2010 § 1405 motion."

Perhaps realizing that the *Rooker-Feldman* doctrine squarely bars the review he seeks, Cooper tries in briefing before this court to recast his complaint as a general constitutional attack on the DNA testing statute. He argues that he is not attacking the specific interpretation that the Superior Court applied to his case, but rather that "Section 1405, *as written by the California legislature and as interpreted by the California courts*, constitutes an

unconstitutional denial of due process." Cooper relies heavily on *Skinner v. Switzer* to support his position.

The facts of *Skinner* bear some resemblance to Cooper's case. Skinner was convicted of murder and failed to obtain state or federal postconviction relief. He moved for DNA testing under a Texas statute allowing prisoners to obtain such testing in limited circumstances. The Texas courts denied his motions, finding no reasonable probability that Skinner would not have been convicted if DNA tests were exculpatory and finding fault on Skinner's part in not requesting the testing earlier. Skinner then brought a § 1983 action against the District Attorney seeking an injunction entitling him to the testing he sought. *Skinner*, 131 S. Ct. at 1295. The Supreme Court rejected the argument that *Rooker-Feldman* barred Skinner's suit. The Court's reasoning hinged on the fact that Skinner did "not challenge the prosecutor's conduct or the decisions reached by the [state court]," but rather "challenge[d], as denying him procedural due process, Texas' postconviction DNA statute 'as construed' by the Texas courts." *Id.* at 1296.[1] In essence, Skinner's § 1983 suit launched a general challenge to the adequacy of the state-law process available to him.

Cooper urges us to read *Skinner* as "approv[ing] the exact type of claim at issue here." Cooper's first claim, however, differs in several critical respects from Skinner's suit. Throughout his complaint, Cooper explicitly attacks both the

---

[1] Specifically, Skinner argued that the state courts had "construed the statute to *completely foreclose* any prisoner who could have sought DNA testing prior to trial, but did not, from seeking testing postconviction." *Id.* at 1296 (internal quotation marks and alterations omitted; emphasis added).

prosecutor's conduct in his specific case and the state court's application in his specific case of the statutory factors governing entitlement to DNA testing. Cooper alleges at length that Ramos and Myers withheld exculpatory information during his trial and that the prosecution planted and tampered with evidence. Cooper alleges that the District Attorney conspired with the state criminalist to deny him access to testing under § 1405, specifically "[b]y knowingly and/or intentionally submitting materially misleading and factually erroneous information to the Superior Court." Cooper accordingly maintains that the Superior Court erred in rejecting these allegations of tampering. As set forth above, the complaint asserts that, contrary to the state court's own assessment of the § 1405 factors, Cooper meets each of the eight requirements. In alleging that the Superior Court's findings have "made it impossible for Plaintiff to utilize § 1405 to prove that he was framed," the emphasis is on *this* plaintiff. It simply cannot be said that, here, Cooper "does not challenge the adverse [state court] decision[] [itself]." *Skinner*, 131 S. Ct. at 1298. He attacks the Superior Court judgment explicitly, and so encounters the *Rooker-Feldman* obstacle that Skinner avoided.

In contrast to *Skinner*, where the prisoner asserted that the Texas statute was constitutionally inadequate as to *any* prisoner who failed to seek DNA testing before trial, Cooper does not actually launch a broadside against the constitutionality of § 1405. In *Skinner*, the Court made clear that, unlike a state court decision, "a statute or rule governing the decision may be challenged in a federal action." *Id.* at 1298. But Cooper articulates no general challenge to the statute. As the district court noted:

> [T]he only argument regarding the constitutionality of Section 1405 that even arguably could be gleaned from the Complaint is that "Section 1405 violates due process by foreclosing access to DNA testing for convicted criminals who allege that they were framed through planted DNA evidence."

Although Cooper maintains that this contention contemplates a general constitutional attack on the statute, nothing in the text of § 1405 prevents victims of framing from obtaining DNA testing, and the Superior Court's decision eschewed any categorical holding regarding the adequacy of tampering allegations.

Notably, the state court declined to read the text of the DNA testing statute—specifically, its requirement that a defendant demonstrate that the evidence he seeks to test was subject to a sufficient chain of custody, § 1405(f)(2)—to categorically bar relief premised upon evidence tampering claims. The government argued that it was a contradiction for Cooper "to allege an unspecified tampering theory relating to items of evidence that he is also contending meet the necessary chain of custody requirement for purposes of his post-conviction DNA testing motion." The state court found no incongruity and found that Cooper had met his statutory burden on the requirement: Cooper's "allegations of tampering do not preclude [Cooper] from meeting his burden under subdivision (f)(2)." In addition, as noted above, the Superior Court denied Cooper's § 1405 motion not because a tampering theory was categorically insufficient for the statutory requirements, but because Cooper *"ha[d] not produced any evidence* to support *his* unspecified tampering theory."  No California court has interpreted § 1405 as

binding the Superior Court to preclude relief based on tampering. *Cf. Skinner*, 131 S. Ct. at 1297 (characterizing Skinner's complaint as "assailing the Texas statute as authoritatively construed [by Texas courts]").

Because Cooper in fact challenges the particular outcome in his state case, "[i]t is immaterial that [Cooper] frames his federal complaint as a constitutional challenge to the state court['s] decision[], rather than as a direct appeal of th[at] decision[]." *Bianchi*, 334 F.3d at 900 n.4. Cooper "both asserts as [his] injury legal error or errors by the state court *and* seeks as [his] remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). The *Rooker-Feldman* doctrine therefore bars the claim. Having established that the essence of Cooper's first claim is "at least in part a forbidden de facto appeal of a state court judgment," we next consider whether his additional claims regarding the actions of Ramos, Myers, and the other defendants are "'inextricably intertwined' with an issue resolved by the state court judicial decision from which the forbidden de facto appeal is taken." *Noel*, 341 F.3d at 1165.

## B. Claim Two – Conspiracy to deny due process in § 1405 proceeding

Cooper's second claim for relief—that Ramos and Myers conspired to deny him a fair § 1405 proceeding in violation of procedural due process—is a variation on his first claim.[2]

---

[2] In addition to challenging the Superior Court's application of § 1405, Cooper's first claim alleges that Myers and Ramos violated procedural due process by "intentionally submitt[ing] materially misleading and factually erroneous information" to the Superior Court during the § 1405

Cooper alleges that Ramos and Myers conspired "to prevent him from obtaining DNA testing," citing to the history of the DNA testing in his case and his challenges to the validity of the evidence the government presented to the Superior Court. Specifically, Cooper faults Ramos for "obtain[ing] an expert declaration from Defendant Myers . . . and rel[ying] heavily on the Myers declaration in opposing Plaintiff's motion]" and alleges that "the declaration contained statements that were either false or misleading." He claims this conduct denied him "a fair § 1405 procedure." Of course, the Superior Court's decision to deny § 1405 testing was directly tied to its decision to credit Myers's declaration and its determination that there was no evidence of tampering with or planting evidence. The Superior Court dismissed the claims as "unsupported speculation," "vague and unsubstantiated" and with "no merit."

Cooper's present attempt to hold Ramos and Myers liable for conspiracy in the state court proceeding that he lost is a claim "inextricably intertwined" with the Superior Court's order denying his request for DNA testing. Cooper's prayer for relief in the form of monetary and punitive damages, although distinct from his prayer for a declaratory judgment that he is entitled to DNA testing, is contingent upon a finding that the state court decision was in error. The alleged conspiracy is a fig leaf for taking aim at the state court's own alleged errors. It is precisely this sort of horizontal review of state court decisions that the *Rooker-Feldman* doctrine bars. Because the second claim "succeeds only to the extent that the state court wrongly decided the issues before it" and

---

proceedings. This allegation overlaps with Claim Two, discussed in this section, and we dispose of it on the same grounds we articulate with regard to Claim Two.

"federal relief can only be predicated upon a conviction that the state court was wrong," *Pennzoil Co.*, 481 U.S. at 25 (Marshall, J., concurring), Cooper cannot escape the reality that his second claim is inextricably intertwined with the state court decision, no matter what label he puts on it. Federal adjudication of this claim would impermissibly "undercut the state ruling" on the same issues. *Bianchi*, 334 F.3d at 898.

## C. Claim Three – Conspiracy to deny fair investigation and conviction

Cooper's third and final claim expands on the second claim to allege a broad conspiracy among all the defendants not only during the § 1405 proceeding but also during the murder investigation and at trial. Cooper alleges that Myers, Ramos, and a host of other public officials conspired to tamper with and falsify evidence in violation of his substantive due process to "a fair and unadulterated investigation and conviction."

To the extent the claim encompasses a challenge to Myers and Ramos's conduct during § 1405 proceedings, the challenge is "inextricably intertwined" with the de facto appeal of the state court judgment for the same reasons set forth above. A review of the broader allegations of conspiracy shows that they, too, are "inextricably intertwined" and therefore barred.

Cooper bases his § 1983 conspiracy claim on allegations that the state court considered in denying further DNA testing, namely, that the defendants manipulated the crime scene; destroyed blood-splattered coveralls belonging to a different potential suspect and withheld evidence of a blood-stained shirt; planted incriminating shoeprints, a hatchet

sheath, a button, and cigarettes; and manipulated the testimony of the surviving victim. In the § 1405 proceeding, the Superior Court found that similar and, in some instances, identical allegations were insufficient to establish Cooper's entitlement to further DNA testing.[3]  From expressly characterizing as "unsupported speculation" Cooper's theory that law enforcement planted his blood on evidence to finding that Cooper made "no showing of bad faith" with regard to the alleged withholding of the shirt, the state court considered these issues as part and parcel of the § 1405 application. The state court accepted previous state court findings regarding the evidence of the shoeprints, the hatchet sheath, and the cigarettes. Finally, the state court dismissed Cooper's claims that statements made by the eight-year-old surviving victim raised any probability that Cooper would have enjoyed a more favorable outcome at trial with the benefit of the requested DNA testing. In general, the state court found that Cooper had "not produced any evidence" to support his theory regarding tampering with the evidence against him.

Cooper can only establish his § 1983 conspiracy by proving an agreement to engage in tampering of evidence, whereas the Superior Court already determined that Cooper's allegations of tampering were speculative and unsupported. To credit Cooper's third claim is just another way of declaring that "the state court wrongly decided the issues

---

[3] In reaching these conclusions, the Superior Court drew on evidentiary determinations made in the multiple previous post-conviction state and federal proceedings that Cooper has initiated. For example, the court incorporated by reference the facts set forth in *People v. Cooper*, 53 Cal. 3d 771, 795–802 (Cal. 1991) (appeal of conviction and death sentence), and in *Cooper v. Brown*, 510 F.3d 870, 874–76, 887–1004 (9th Cir. 2007) (appeals court decision on successive federal habeas petition with appendix setting forth district court decision).

before it." *Pennzoil Co.*, 481 U.S. at 25 (Marshall, J., concurring).     Accordingly, Cooper's third claim is inextricably intertwined with the merits of the state court's decision and is effectively "a prohibited appeal of the state-court judgment." *Id.*

## III.   Dismissal Without Leave to Amend

Cooper's final argument is that the district court erred in dismissing his complaint without leave to amend.  Dismissal of a complaint without leave to amend is proper where it is clear that the complaint could not be saved by amendment. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).  Cooper offers two bases for amendment, each of which is futile.

### A.  Amendment to focus on actions of adverse parties

Cooper proposes to amend his complaint to focus on the actions of Myers, Ramos, and the other public officials, rather than the state court's decision.     He argues that, notwithstanding certain allegations assailing the reasoning and result of the state court, "it is indisputable that the crux of this case involves defendants' actions in the conspiracy . . . *not* the correctness of the Superior Court's holding."   In support, Cooper asserts the following: he sued the individual defendants, not the court; he seeks relief based on the alleged conspiracy that resulted in the state court decision, not based on the state court decision itself; and throughout the district court proceedings on the motion to dismiss, Cooper represented that he was not challenging the state court's decision.   Cooper argues that he can cure any *Rooker-Feldman* problems by simply removing his claim for declaratory relief and "gently editing" the paragraphs of the

complaint that refer to his satisfying the § 1405 factors and to the Superior Court's unconstitutional interpretation of the statute.  Absent these allegations, he posits that there would no longer be a forbidden de facto appeal of the state court judgment to serve as a hook for barring claims that are "inextricably intertwined."  *See Noel*, 341 F.3d at 1166 (noting that "[b]ecause [plaintiff] has not brought a forbidden de facto appeal from any of the earlier state court judgments, the 'inextricably intertwined' analysis . . . does not apply"). Nonetheless, even if Cooper's suggested editorial flourishes are credited and the first claim could be excised, his remaining second and third claims each confront insurmountable obstacles.

Collateral estoppel, commonly known as issue preclusion, provides an independent bar to Cooper's second claim. Under California law, which is applicable here, the following requirements must be met for collateral estoppel to  apply:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.   Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003) (internal citation omitted).  In his second claim, Cooper accuses Myers of misleading the court and submitting a false declaration,

and accuses Ramos of opposing Cooper's § 1405 motion in reliance on a declaration he knew was mistaken. Cooper maintained that further testing using a MiniFiler kit would reasonably contradict prior test results for which Myers vouched. The state court squarely rejected that very argument and, relying on the Myers declaration, found that "there is no practical significance to additional nuclear DNA testing with the MiniFiler kit."

Under issue preclusion rules, these same factual allegations now presented in federal court cannot be credited. Because Cooper already litigated and lost this precise claim in state court, the first and second prongs of the collateral estoppel test are met. As Cooper admits, the state court decision adopted "verbatim much of the language in Defendant Myers's declaration," thus rejecting Cooper's allegations that the declaration was false. The state court "necessarily decided" these issues—the third prong—not only because it was explicit in doing so, but also because Myers's explanation of previous test results and likely outcomes from further test results was central to the state court's denial of Cooper's § 1405 motion. Cooper does not contest either of the final two prongs of California's collateral estoppel requirements: that the decision in the former proceeding was final and on the merits, and that the parties are in privity. Further, "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation" are public policies warranting preclusion of relitigation of the issues here. *Lucido v. Superior Court*, 51 Cal. 3d 335, 343 (Cal. 1990). Accordingly, Cooper's second claim is collaterally estopped.

Cooper's third claim, alleging not only false testimony during the § 1405 proceeding, but also a broad conspiracy to

obtain Cooper's conviction and keep him incarcerated, is precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994). The heart of the third claim is an effort to attack the integrity of the investigation and trial. Successfully litigating Cooper's claims of an evidence tampering conspiracy would necessarily implicate the validity of his state criminal conviction. These claims are not cognizable unless Cooper's conviction is vacated, overturned, or invalidated. *Heck*, 512 U.S. at 486–87; *see also Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir. 2006) (holding a § 1983 conspiracy claim in connection with a plaintiff's arrest and prosecution barred by *Heck*).[4] We also note that many of Cooper's multiple allegations of tampering with evidence are barred by collateral estoppel under the same rationale as to his second claim. Thus Cooper's effort to amend the third claim would be futile also.

## B. Amendment to challenge construction of § 1405

Finally, Cooper asks that "[t]o the extent it is unclear that [he] is attacking Section 1405 as construed by the California courts and not a specific Superior Court decision, [he] should be granted leave to amend his complaint to clarify this point." The Superior Court made a fact-specific determination based on Cooper's own case and did not rely on a "rule governing the decision [that] may be challenged in a federal action." *Skinner*, 131 S. Ct. at 1298. The "construction" of the statute that Cooper seeks to contest is in actuality only the fact-specific application of the statute to his own case, and he has

---

[4] Cooper does not contest this conclusion. The defendants argued on appeal that *Heck* barred the conspiracy claim against all the defendants (Claim Three), and Cooper's only response was that *Heck* posed no obstacle to his purported challenge to the constitutionality of § 1405.

not cited any controlling state law that he contends is unsound.  Amendment is futile on this point as well.

Because amendment will not save any of Cooper's claims, the district court did not err in implicitly denying Cooper leave to amend.

**AFFIRMED.**