**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2201
_____

ROBERT MUIR WADE

v.

MONROE COUNTY DISTRICT ATTORNEY;
E. DAVID CHRISTINE, D.A. MONROE COUNTY,
Appellants
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-15-cv-00584)
Magistrate Judge: Hon. Joseph F. Saporito
_____

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
February 3, 2020
_____

Before: SHWARTZ, SCIRICA, and RENDELL, <u>Circuit Judges</u>.

(Filed: February 11, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

The Monroe County District Attorney and District Attorney E. David Christine (collectively, the "District Attorney") appeal the District Court's order entering judgment for Robert Muir Wade on his claim that the Pennsylvania courts violated his right to procedural due process under the Fourteenth Amendment to the United States Constitution by denying him access to post-conviction DNA testing. Because the Rooker-Feldman doctrine bars Wade's claim, we will vacate the judgment and remand with instructions to dismiss the complaint for lack of subject-matter jurisdiction.

I[1]

A

In December 1996, hunters in Monroe County found the body of Lekitha Council, a woman with whom Wade once had a relationship, partially wrapped in a garbage bag. Circumstantial evidence connected Wade to the murder.

A jury convicted Wade of first-degree murder and abuse of a corpse in violation of 18 Pa. Cons. Stat. Ann. § 2502(a) and 18 Pa. Cons. Stat. Ann. § 5510, respectively. Wade was sentenced to life imprisonment without parole for murder and a concurrent one to two years' imprisonment for abuse of a corpse. The Superior Court of Pennsylvania affirmed the judgment of conviction and sentence. Commonwealth v. Wade, 790 A.2d 344 (Table) (Pa. Super. Ct. 2001). The Pennsylvania Supreme Court denied Wade's

---

[1] These facts are drawn from the parties' joint stipulation of facts.

petition for leave to petition for allowance of appeal <u>nunc pro tunc</u>.[2]  Wade thereafter

filed petitions under the Pennsylvania Post Conviction Relief Act ("PCRA") and a

request for DNA testing in the state courts.  Each was unsuccessful.

Wade filed another motion for post-conviction DNA testing,[3] and a supplemental

motion thereafter, specifically requesting that certain evidence be subject to "Touch"

DNA testing.[4]  App. 88.  The PCRA court denied the motions.  <u>Commonwealth v. Wade</u>,

No. CP-45-CR-0000639-1998 (Monroe Cty. Ct. Com. Pl. June 15, 2012).  The court

held, among other things, that Wade failed to meet the requirements of Pennsylvania's

DNA testing statute, 42 Pa. Cons. Stat. Ann. § 9543.1[5] for additional DNA testing

---

[2] Wade also filed a petition for habeas corpus in 2003, which was denied, and we denied Wade's application for a certificate of appealability.

[3] Wade requested DNA testing of: (1) the victim's fingernails and any scrapings from those fingernails; (2) the blood-stained yellow turtle neck the victim had worn; (3) the victim's lavender leather coat, bra, underwear, pantyhose, and shoes; (4) the contents of the victim's lavender coat; and (5) the trash bag in which the victim's body was found.

[4] The PCRA court stated that Touch DNA testing refers to DNA removed from skin "left behind when a person touches or comes into contact with items such as clothes, weapons, or other objects." <u>Commonwealth v. Wade</u>, No. CP-45-CR-0000639-1998, slip op. at 3 n.2 (Monroe Cty. Ct. Com. Pl. June 15, 2012).

[5] Section 9543.1 provides in pertinent part:

(a) Motion.--
> (1) An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.
> (2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in

3

because (1) Wade's "assertion that the results of Touch DNA analysis of the specified evidence, assuming exculpatory results, will establish his actual innocence of the murder of Lekitha Coun[cil], is speculative and irrelevant," (2) "there was no evidence presented at trial that [Wade's] DNA was found anywhere on the victim, on her clothes or on the

---

existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

. . .

(c) Requirements.--In any motion under subsection (a), under penalty of perjury, the applicant shall:

. . .

    (3) present a prima facie case demonstrating that the:

        (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

        (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

            (A) the applicant's actual innocence of the offense for which the applicant was convicted;

. . .

(d) Order.--

. . .

    (2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility for an applicant under State supervision . . . that the testing would produce exculpatory evidence that:

        (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted . . . .

42 Pa. Cons. Stat. Ann. § 9543.1(a)-(d).

garbage bag that the victim's body was found in,"[6] and (3) "the jury heard substantial evidence regarding the absence of [Wade's] DNA." Wade, slip op. at 9-10.

The Superior Court affirmed, agreeing with the PCRA court that, given the evidence at trial,

> even assuming DNA testing would reveal DNA from someone other than [Wade] or the victim on the multiple items [Wade] seeks to have tested, [Wade] does not demonstrate it is more likely than not that no reasonable juror confronted with the DNA and other evidence would find the defendant guilty beyond a reasonable doubt.

Commonwealth v. Wade, No. 2041 EDA 2012, 2013 WL 11273719, at *3 (Pa. Super. Ct. Mar. 20, 2013). The Pennsylvania Supreme Court denied his petition for allowance of appeal. Commonwealth v. Wade, 80 A.3d 777 (Table) (Pa. 2013). Wade maintains that he is actually innocent.

B

Wade sued the District Attorney in federal district court under 42 U.S.C. § 1983, alleging that he had been denied access to, and DNA testing of, physical evidence in the District Attorney's possession and that this denial violated his right to procedural due process and to a reasonable opportunity to prove his innocence. Wade sought a judgment directing the District Attorney to, among other things, produce certain physical evidence and allow Wade to test it.

---

[6] In summarizing the forensic evidence presented to the jury at trial, the PCRA court noted that the fingerprints of a forensic scientist at the Pennsylvania State Police Crime Lab and four other fingerprints that lacked sufficient detail or characteristics to identify the source were discovered on the garbage bag in which the victim was found. Wade, slip op. at 8. The parties also stipulated that the DNA of another individual was detected.

5

Following a bench trial, the District Court entered judgment in favor of Wade on his procedural due process claim and granted him access to the physical evidence and the DNA testing he sought. The Court held that the PCRA court's application of Pennsylvania's post-conviction DNA testing statute, § 9543.1, to Wade violated procedural due process. Wade v. Monroe Cty. Dist. Att'y, No. 3:15-CV-00584, 2019 WL 2084533, at *14-15 (M.D. Pa. May 13, 2019). The Court reasoned that, on its face, § 9543.1 does not violate due process but that "the particular—and peculiar—construction of [§ 9543.1] applied by the PCRA court in Wade's case was fundamentally unfair" because (1) § 9543.1 does not require a petitioner to show that the DNA testing results would be favorable but only requires him to "present a prima facie case demonstrating that DNA testing of the specific evidence, assuming exculpatory results, would establish . . . the applicant's actual innocence," id. at *14 (omission in original) (quoting § 9543.1(c)(3)(ii)(A)); (2) the PCRA court rejected "as speculative" Wade's argument that the Touch DNA testing would support an inference that an assailant other than Wade had killed the victim, id. at *15; and (3) this construction read the words "assuming exculpatory results" out of § 9543.1, denied him the opportunity to show his actual innocence, and thereby violated his right to procedural due process, id. The District Attorney appeals.

6

## II[7]

Wade claims that the denial of access to physical evidence in the District Attorney's possession for DNA testing violated his Fourteenth Amendment right to procedural due process. On appeal, Wade states that he is not challenging the DNA testing statute itself, but instead contends that the state court's "interpretation" and "application of the statute" to him is "fundamentally unfair." Appellee's Br. 8. We hold that, under the Rooker-Feldman doctrine, the federal court lacks subject-matter jurisdiction to consider Wade's as-applied challenge to Pennsylvania's DNA statute.

The Rooker-Feldman doctrine stems from the Supreme Court's decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and bars federal district courts from exercising jurisdiction "over suits that are essentially appeals from state-court judgments," Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165 (3d Cir. 2010). The doctrine prohibits "state-court losers" from complaining about "injuries caused by state-court judgments" and from "inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

---

[7] The District Court exercised jurisdiction under 28 U.S.C. § 1331. To the extent we have jurisdiction, we exercise it under 28 U.S.C. § 1291.

Courts "have an independent obligation to determine whether subject-matter jurisdiction exists." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). We exercise de novo review over questions of subject-matter jurisdiction. Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 163 (3d Cir. 2010).

7

For the Rooker-Feldman doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state-court judgment, (3) that judgment issued before the federal suit was filed, and (4) the plaintiff invites the district court to review and reject the state-court judgment." Geness v. Cox, 902 F.3d 344, 360 (3d Cir. 2018) (quoting In re Phila. Entm't & Dev. Partners, 879 F.3d 492, 500 (3d Cir. 2018); see Exxon Mobil, 544 U.S. at 284.

All four requirements are met here. First, Wade lost his state-court action when the PCRA court denied his motion for post-conviction DNA testing under § 9543.1, the Superior Court affirmed the decision, and the Pennsylvania Supreme Court denied his petition for allowance of appeal. Second, Wade asserts he was injured by the Pennsylvania courts' alleged misinterpretation and application of § 9543.1 and resulting denial of his motion. Specifically, Wade contends that the PCRA court interpreted § 9543.1 to require him to prove the DNA testing would produce exculpatory results, while § 9543.1 requires courts to "assum[e] exculpatory results," and this allegedly erroneous interpretation led to the denial of relief and thus injured him. Third, the state-court judgment was entered before Wade filed his federal suit. Fourth, Wade asked the District Court to review the validity of the state-court judgment, hold that its interpretation violated procedural due process, and grant him the DNA testing he seeks. Because all four elements are met, the Rooker-Feldman doctrine bars his claim.[8]

---

[8] Several other circuit courts also have held that the Rooker-Feldman doctrine bars challenges nearly identical to Wade's. See Cooper v. Ramos, 704 F.3d 772, 779-81 (9th Cir. 2012) (holding that the Rooker-Feldman doctrine barred challenge to state court's application of the state's DNA testing statute since, although plaintiff tried to cast his

8

Wade relies on Skinner v. Switzer, 562 U.S. 521 (2011), to argue that Rooker-Feldman does not foreclose his claim because he asserts that he does not directly attack the state court's judgment. Skinner's claim, however, is unlike Wade's because Skinner challenged the DNA statute generally while Wade challenges its application to him specifically. In Skinner, after the petitioner was convicted of murder, he moved for DNA testing under Texas's post-conviction DNA testing statute, but the Texas courts denied his motions. Petitioner brought a § 1983 claim against the District Attorney, alleging that Texas had violated his right to procedural due process by refusing to provide for the DNA testing he requested. Id. at 529. The Supreme Court held that the Rooker-Feldman doctrine did not bar the suit because petitioner did "not challenge the prosecutor's conduct or the decisions reached by the [state court] in applying [the DNA statute] to his motions" but "instead, he challenge[d] . . . Texas' postconviction DNA statute 'as

complaint as a general attack on the statute, he asserted legal errors by the state court as his legal injury and relief from the state-court judgment as his remedy); Alvarez v. Att'y Gen., 679 F.3d 1257, 1263-64 (11th Cir. 2012) (affirming district court's determination that it lacked jurisdiction over plaintiff's claim that the Florida courts' application of state DNA access procedures violated procedural due process because the claim "broadly attack[ed] the state court's application of Florida's DNA access procedures to the facts of his case" and not "the constitutionality of those underlying procedures"); McKithen v. Brown, 626 F.3d 143, 154-55 (2d Cir. 2010) (holding that Rooker-Feldman barred claim that the state court "incorrectly and unconstitutionally interpreted the [New York DNA] statute by not assuming exculpatory results" because plaintiff alleged he was injured by the state court's interpretation of the statute and sought review of the validity of its court judgment); In re Smith, 349 F. App'x 12, 15 (6th Cir. 2009) (holding that Rooker-Feldman barred claim that plaintiff's procedural due process rights were violated when he was denied statutory DNA testing because the "source of the injury" was the state trial court order denying access to the testing). Cf. Morrison v. Peterson, 809 F.3d 1059, 1069-70 (9th Cir. 2015) (holding that Rooker-Feldman doctrine did not bar as-applied challenge to California's post-conviction DNA testing statute where plaintiff sought to invalidate the statute as unconstitutional but did not seek an order granting DNA testing).

9

construed' by the Texas courts," as denying him procedural due process. Id. at 530. Thus, "he target[ed] as unconstitutional the Texas statute [that state courts] authoritatively construed," and because he challenged the statute governing the decision, the Court had subject-matter jurisdiction over the suit. Id. at 532-33.

Unlike the claim in Skinner, Wade contends that the PCRA court misinterpreted the DNA statute in his case specifically, and in doing so, violated his procedural due process rights. At its core, Wade's challenge is to the PCRA court's particular interpretation of the DNA statute and application of the statute to him, not to the statute as "authoritatively construed" by Pennsylvania courts or as it applies to prisoners generally. Indeed, the PCRA court applied the DNA statute to Wade specifically, reasoning that Wade's "assertion that the results of Touch DNA analysis of the specified evidence, assuming exculpatory results, will establish his actual innocence of the murder of Lekitha Council, [was] speculative and irrelevant." Wade, slip op. at 10. The court concluded that Wade had failed to present a prima facie case that would entitle him to DNA testing because, given the evidence at trial, there was no reasonable possibility that the testing would establish his actual innocence. Id. at 11. Similarly, the District Court examined the PCRA court's application of the statute to Wade and found that the PCRA court's "particular—and peculiar—construction of the state post-conviction DNA testing statute . . . in Wade's case was fundamentally unfair." Wade, 2019 WL 2084533, at *14.

The language of both the PCRA court and District Court reveal that the state court entered a ruling based upon Wade's situation, and made no broad pronouncement about how the statute should be construed in all cases. Wade's due process claim is based on

10

the injury caused by this adverse state-court ruling, and it is exactly the type of claim a federal court cannot review.  See Cooper v. Ramos, 704 F.3d 772, 780-81 (9th Cir. 2012) (reasoning that plaintiff's procedural due process claim that the state court "made it impossible" for him to utilize the DNA statute was dissimilar to Skinner, where the claim was that the Texas statute was inadequate as to any prisoner, and holding that Rooker-Feldman barred plaintiff's claim); Alvarez v. Att'y Gen., 679 F.3d 1257, 1263-64 (11th Cir. 2012) (holding that Rooker-Feldman barred plaintiff's procedural due process claim that the state court's denial of access to DNA testing caused him injury, reasoning that it was unlike the claim in Skinner that Texas's DNA statute as "authoritatively construed" was unconstitutional).

## III

For these reasons, we will vacate the judgment of the District Court and remand with instructions to dismiss Wade's complaint for lack of subject-matter jurisdiction.

11